## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

NATIONAL STAFFING SOLUTIONS,
INC., a Florida Corporation,

    Plaintiff,

    vs.

JAIRO ARMSTRONG, an individual,

    Defendant.
_____/

**PLAINTIFF'S COMPLAINT AND INJUNCTIVE RELIEF SOUGHT**

Plaintiff, NATIONAL STAFFING SOLUTIONS, INC. ("National"), a Florida Corporation, hereby files this Complaint against Defendant, JAIRO ARMSTRONG ("Armstrong"), an individual, and in support thereof states as follows:

### INTRODUCTION

1. Armstrong is a former employee of National. As set forth in further detail below, both before and after termination of his employment, Armstrong accessed, saved, and transmitted National's confidential business information to his personal computer and email account. He did so in violation of his contractual obligations with National and existing law. Armstrong also violated a contractual restriction precluding him from soliciting National's employees or representatives following the end of his employment with National.

2. National seeks to stop any unauthorized access and use of its confidential business information, to learn the identity of any persons that Armstrong shared National's confidential business information with, to enforce its contract with Armstrong to require him to remove National's confidential business information from his personal devices and accounts, and to enforce the contractual restriction precluding Armstrong from contacting National's current and former employees and representatives.

## PARTIES

3. National is a corporation organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida.

4. Armstrong is an individual residing in Orlando, Florida and is a former Healthcare Recruiter of National and performed the work of a staffer and recruiter of healthcare professionals.

## JURISDICTION AND VENUE

5. This is an action for monetary damages and for injunctive relief relating to Armstrong's violations of the laws of the United States and the State of Florida.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1331. This Court has supplemental jurisdiction over National's state and common law claims pursuant to 28 U.S.C. § 1367(a). Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises its subject matter jurisdiction over all causes of action stated herein.

## GENERAL ALLEGATIONS

8. National provides employment agency services, namely in the temporary and permanent placement of healthcare professionals, to clients throughout the United States.

9. National's computer systems were and are password protected and are used in the operation of National's national business.

10. In his role as Healthcare Recruiter, Armstrong performed work for National as a staffer and recruiter.

11. To carry out his duties, Armstrong was also provided with certain electronic devices, including an HP ProBook laptop computer (his "Company Computer") and access to National's computer systems.

12. On August 27, 2018, Armstrong executed a Noncompetition, Nonsolicitation and Confidentiality Agreement (the "Agreement") as part of his employment with National. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

13. Pursuant to the Agreement, Armstrong agreed that, during the term of his employment with National and for two years thereafter, he would not "solicit the employment of any employee or representative of [National] or

employ, hire or engage any former employee of [National] . . . or assist or consult with any person to do any of the foregoing." *See* Exhibit A, Section 2.

14. Armstrong also agreed that if requested by National (and in any event upon termination of employment), he would "return promptly to [National] all equipment, written materials and records, and any copies thereof, and any other tangible items . . . that relate to the business of [National] . . . ." *See* Exhibit A, Section 7(d). This requirement extended to all materials related to the business in Armstrong's custody or control "that were provided by [National] to [Armstrong] or created or acquired in connection with or during the Term of Employment." *Id.*

15. He further agreed to "return, allow access, and/or provide the password for all electronically stored information on smartphones, iPads, laptops, electronic devices or any other systems that store electronic information," including without limitation "Dropbox and/or any other medium wherein data has been stored," upon termination of employment with National. *See* Exhibit A, Section 7(e). Additionally, this provision grants National "the right to physically collect all of these devices and remove the electronically stored company information." *Id.*

16. Such restrictions and obligations were reasonable because Armstrong understood and agreed that he would "be dealing with confidential systems, processes, programs, [and] information" through his employment with National, that such confidential information is the "exclusive property" of

4

National. *See* Exhibit A, Section 6(b). Armstrong acknowledged National's ownership of this confidential and proprietary information, as well as the restrictions on the use thereof, when he agreed that "[u]nder no circumstances shall any such information or documents be removed without [National's] prior written consent." *Id.*

17. Additionally, Armstrong agreed that he "would not use or disclose to anyone, directly or indirectly, any of the confidential matters or use them other than in the course of his or her employment." *See* Exhibit A, Section 6(b).

18. On December 13, 2021, National's Executive Vice President reprimanded Armstrong, verbally and via email, for carrying out work for National on his personal computer. Armstrong was reminded that he was not permitted by National to use any device other than his Company Computer for such purposes.

19. However, in contravention of the instructions from the Executive Vice President, Armstrong sent an email on November 16, 2022, to his personal email account with an Excel spreadsheet containing confidential and sensitive data belonging to National, such as the names, work locations, billing rates, and pay rates of National employees.

20. On January 30, 2023, Armstrong notified National that he intended to resign. His last day of employment was January 31, 2023.

21. Shortly after Armstrong's resignation, National employed a digital forensics company to conduct an investigation of Armstrong's Company

5

Computer.

22. Through this investigation, National learned that on January 23, 2023, mere days before his resignation, Armstrong installed a software program called ShareMouse on his Company Computer without authorization or permission from National.

23. Under normal circumstances, National employees do not have the ability to install software onto their work computers. However, on January 23, 2023, Armstrong contacted National's Information Technology ("IT") department for remote support regarding his Company Computer. National's IT department provided Armstrong with temporary administrative credentials to facilitate this remote support.

24. Armstrong utilized the temporary administrative credentials provided to him to download and install the ShareMouse software on his Company Computer. Armstrong's actions were not authorized by National.

25. ShareMouse enabled Armstrong to connect his personal computer to his Company Computer. This allowed Armstrong to remotely access and transfer National's confidential data located on his Company Computer to his personal computer, thus circumventing the security settings that National had in place to prevent the downloading or transfer of files from National's work systems onto separate computers or devices.

26. The forensic investigation revealed that Armstrong used the ShareMouse program numerous times during the week of January 23, 2023, and

for several hours on January 30, 2023.

27. Armstrong's use of ShareMouse to connect his Company Computer to his personal computer was in direct contravention of National's computer policy and the verbal and written communications that he received from National's Executive Vice President on December 13, 2021.

28. Armstrong returned his Company Computer that had been given to him by National but retained his personal computer that was connected to it. To date, despite repeated requests, Armstrong has not agreed to permit a third-party forensic investigator to confirm that all of National's materials and electronically stored information have been returned. Nor has Armstrong allowed access or provided the password for the devices or media that stored National's confidential business information.

29. Armstrong is presently employed at the staffing firm Longship Management Corporation ("Longship")—a direct competitor of National's—for which he performs the same or very similar type of work that he carried out at National.

30. National has contacted multiple nurses with whom Armstrong previously worked in his capacity as a Healthcare Recruiter for National. At least one such nurse has confirmed that Armstrong reached out to her and attempted to hire her in his capacity for Longship.

31. National has been and will continue to be damaged as a result of Armstrong's actions and seeks injunctive and other equitable relief, as well as

damages, punitive damages, statutory damages, costs, and attorney fees.

32. National has retained the undersigned law firm to represent it in this action and is obligated to pay the firm its reasonable expenses and costs, including attorney and paralegal fees, incurred in this action.

## COUNT I
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT ("CFAA")
### *Against Armstrong*

33. National realleges and incorporates the allegations contained in paragraphs 1 through 32 *supra* as if fully set forth herein.

34. National's confidential data was stored on computer systems that constituted a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B), because these systems were and are used in or affect interstate commerce.

35. Armstrong intentionally exceeded his authorized access when he obtained National's confidential data from National's protected computer systems. *See* 18 U.S.C. § 1030(a)(2)(C).

36. Armstrong knowingly caused the transmission of a program, information, code, or command when he emailed National's confidential data to his personal email account and when he installed and utilized the ShareMouse software, allowing him to circumvent National's security systems and access National's confidential data from his personal computer, thereby intentionally causing damage without authorization to National and its protected computer systems. *See* 18 U.S.C. § 1030(a)(5)(A).

37. Armstrong knowingly and intentionally accessed National's protected computer systems without authorization, recklessly causing damage to National and its protected computer systems. *See* 18 U.S.C. § 1030(a)(5)(B).

38. Armstrong knowingly and intentionally accessed National's protected computer systems without authorization, causing damage and loss to National and its protected computer systems. *See* 18 U.S.C. § 1030(a)(5)(C).

39. Armstrong knew or should have known that his actions would cause harm or loss to National and its protected computer systems.

40. As a result of these actions, Armstrong has caused damages to National that have exceeded $5,000 in economic damages during a one-year period and has compromised, and forced National to take measures to restore, the security, integrity, and availability of National's computer systems and confidential data.

WHEREFORE, National prays for an order awarding it (a) actual damages; (b) any profits Armstrong gained by violating the CFAA; (c) injunctive and other equitable relief to prevent future violations of the CFAA, including without limitation, an order prohibiting Armstrong from further disclosing or using National's confidential data; (d) an order requiring Armstrong to return National's confidential data; (e) National's reasonable attorneys' fees and other litigation costs; and (f) such additional relief that is deemed fair and equitable.

# COUNT II
# VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT ("CADRA")
### *Against Armstrong*

41. National realleges and incorporates the allegations contained in paragraphs 1 through 32 *supra* as if fully set forth herein.

42. National's confidential data was stored on computer systems that constituted a "protected computer" as defined under the Florida Computer Abuse and Data Recovery Act ("CADRA"), Florida Statutes § 668.802(6), because these systems were used in connection with the operation of National's business and stored information, programs, or code in connection with the operation of National's business that could be accessed only through a "technological access barrier," as defined under CADRA, Florida Statutes § 668.802(7).

43. Armstrong knowingly and with intent to cause harm or loss, obtained National's confidential data from National's protected computer systems without authorization and, as a result, caused harm or loss to National. *See* Fla. Stat. § 668.803(1).

44. Armstrong knowingly and with intent to cause harm or loss, caused the transmission of a program, code, or command to National's protected computer systems without authorization and, as a result, caused harm or loss to National. *See* Fla. Stat. § 668.803(2).

45. Armstrong committed the acts set forth herein knowingly and with

intent to cause loss as defined under CADRA, Florida Statutes § 668.802(5).

46. National has been damaged by Armstrong's violations of CADRA, and is entitled pursuant to CADRA, Florida Statutes § 668.804(1), to recover such damages, to recover any profits Armstrong gained as a result of his CADRA violations, to injunctive or other equitable relief to prevent any future violations of CADRA, and to recover National's confidential data and all copies thereof.

47. National has incurred reasonable attorneys' fees and costs incident to bringing this action. Pursuant to Fla. Stat. § 668.804(2), Armstrong is required to reimburse National for all reasonable attorneys' fees incurred due to Armstrong's violations of CADRA.

WHEREFORE, National prays for an order awarding it (a) actual damages pursuant to Fla. Stat. § 668.804(1)(a); (b) any profits that Armstrong gained from violating CADRA that are not included in National's actual damages, pursuant to Fla. Stat. § 668.804(1)(b); (c) injunctive and other equitable relief to prevent a future violation of Fla. Stat. § 668.803, including without limitation, an order prohibiting Armstrong from further disclosing or using National's confidential data, pursuant to Fla. Stat. § 668.804(1)(c); (d) an order requiring Armstrong to return National's confidential data and all copies thereof, pursuant to Fla. Stat. § 668.804(1)(d); (e) National's reasonable attorneys' fees and other litigation costs, pursuant to Fla. Stat. § 668.804(2), as the prevailing party; and (f) such additional relief that is deemed fair and equitable.

## COUNT III
## BREACH OF CONTRACT
### *Against Armstrong*

48. National realleges and incorporates the allegations contained in paragraphs 1 through 32 *supra* as if fully set forth herein.

49. The Agreement is a valid and binding contract.

50. Armstrong breached the Agreement by emailing National's confidential data to his personal email.

51. Armstrong breached the Agreement by installing and utilizing the ShareMouse software, which allowed him to circumvent National's security systems and access National's confidential data from his personal computer.

52. Armstrong breached the Agreement by contacting and attempting to recruit for Longship nurses whom Armstrong had previously worked with through his capacity as a Healthcare Recruiter for National.

53. As a result of Armstrong's actions, National has suffered damages including, but not limited to, damages to the security, integrity, and availability of National's computer systems and other confidential and proprietary information, and lost revenues, the specific value of which will be determined in discovery and at trial.

WHEREFORE, National prays for an order awarding National its damages, costs, attorneys' fees, specific performance allowing the inspection of Armstrong's devices, electronic storage media, and accounts containing National's confidential data, and such additional relief that this Court deems fair

and equitable.

Dated: September 1, 2023.

Respectfully submitted,

**Adam C. Losey, Esq.**
Florida Bar No. 69658
Primary: alosey@losey.law
Secondary: docketing@losey.law
**M. Catherine Losey, Esq.**
Florida Bar No. 69127
Primary: closey@losey.law
**Scott A. Richards, Esq.**
Florida Bar No. 72657
Primary: srichards@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-1605