UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING
SOLUTIONS, INC.,                                            Case No.: 6:23-cv-01693-
WWB-EJK

           Plaintiff,

v.

JAIRO ARMSTRONG,

           Defendant.
_____/

## PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT

National Staffing Solutions, Inc. ("National") and Jairo Armstrong, Diane Sandoval, Cherisse Sandoval, David Palumbo, Brittany LaMantia, and Olivia Campbell, (Collectively "Former Employees"), by and through their undersigned attorneys, hereby file their Joint Motion for Approval of Settlement[1] of the above captioned case. In support thereof, the attorneys for the Parties state as follows:

### I.    Pertinent Facts

1) As the facts of this case demonstrate, this is not your run-of-the-mill Fair Labor Standards Act ("FLSA") case. But, rather a difficult and highly antagonistic case. This case is complex with numerous claims being alleged between the Parties.

---

[1] The Parties' Joint Motion for Approval of Settlement is being submitted in compliance with *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009) (providing for expedited FLSA settlement approval). This Honorable Court has followed the principles of *Bonetti*. *See, e.g., Davis v. Recruiting, Inc.*, No. 6:18-cv-695-Orl-78DCI, 2019 U.S. Dist. LEXIS 239945, at *3 (M.D. Fla. Nov. 27, 2019); *see also Cramer*

1

2) The case was initiated when National filed its Complaint against Mr. Armstrong on September 1, 2023. (Doc. 1). National sought actual damages, as well as, injunctive relief for violations of Federal Computer Fraud and Abuse Act, Florida Computer Abuse and Data Recovery Act, and breach of a restrictive covenant. *Id.*

3) Then on September 5, 2023, National moved for a preliminary injunction and requested an expedited hearing. (Doc. 5).

4) Mr. Armstrong responded by filing an Answer and Affirmative Defenses to National's Complaint, a Counterclaim, (Doc. 27), as well as, his memorandum of law in opposition to National's Motion for Preliminary Injunction. (Doc. 31). Mr. Armstrong's counterclaim consisted of: (1) an individual count for violation of 29 U.S.C. § 207 of the Fair Labor Standards Act, ("FLSA"); (2) a count alleging a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA; and (3) an individual count for unpaid wages. (*See* Doc. 27 at 10-13).

5) Subsequently, Mr. Armstrong, Diane Sandoval, Cherisse Sandoval, David Palumbo, Olivia Campbell, and Brittany LaMantia filed consents to join the collective action. (Docs. 33-35, 39, 48, and 50).

6) On November 1, 2023, Mr. Armstrong moved for conditional certification of the collective action. (Doc. 36).

---

*v. Favorite Healthcare Staffing, Inc.,* Case No.: 6:20-cv-1808-RBD-EJK, 2023 WL 3309506 (M.D. Fla. April 14, 2023).

7) On November 6, 2023, National filed a Motion to Dismiss Mr. Armstrong's Counterclaim or in the alternative, a More Definite Statement, (Doc. 37), to which Mr. Armstrong responded. (Doc. 44).

8) National also filed a memorandum in opposition to Mr. Armstrong's Motion for Conditional Certification, (Doc. 40), and moved to strike the consents to join the collective filed by Diane Sandoval and David Palumbo. (Doc. 43). Mr. Armstrong then filed a memorandum of law in response to National's Motion to Strike the consents. (Doc. 47).

9) Thereafter, the Parties engaged in settlement discussions.

10) Mr. Armstrong propounded written discovery directed to National that consisted of interrogatories, requests for production, requests for admissions, and request for entry upon land on December 5, 2023, and February 2, 2024. National responded to Mr. Armstrong's written discovery requests.

11) On or about February 9, 2024, National propounded interrogatories, requests for production, and requests for admissions to Mr. Armstrong.

12) On February 29, 2024, National sent numerous letters to counsel for Mr. Armstrong alleging claims against the Opt-In Recruiters relating to a breach of contract claim against Olivia Campbell, possible breach of contract claims against Diane Sandoval, a breach of contract claim and a misrepresentation claim against David Palumbo, and a misrepresentation claim against Britanny LaMantia.

13) Shortly thereafter, the Parties agreed that it was a proper time to mediate the case in light of the voluminous document discovery having been

3

completed, the potential escalation of the conflicts between the Parties, the prospect of additional money and resources being expended on additional discovery and motion practice and with fruitful settlement discussions commencing.

14) On March 8, 2024, the Parties filed their Motion to Stay Proceedings, (Doc. 52), advising the Court the Parties were going to mediate the matter requesting a stay of all pending matters. *Id.*

15) On March 19, 2024, mediation was held, and the Parties were able to resolve the various disputes between them. (*See* Docs. 54, 55).

16) Because there are claims arising under the Fair Labor Standard Act ("FLSA") that have been compromised, the Parties' request the Court to approve the settlement.

17) The Parties hereby request approval of the Parties' Settlement. (*See* Exhibit "A").

## II. Legal Analysis

18) In *Bonetti*, the Court outlined a procedure for approving FLSA settlements. *See Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). In conducting its analysis, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *See e.g. Mallon v. Hospice of St. Francis, Inc.*, Case No.: 6:21-cv-1782; 2022 WL 2718841 *1 (M.D. Fla. June 27, 2022) ("There is a strong presumption in favor of finding a settlement is fair.") (quotations and citations omitted) (Kidd, J).

19) Pursuant to *Bonetti,* the Parties are to advise the Court: (1) that the

4

settlement constitutes a compromise of the Former Employees' FLSA claims; (2) of the terms of the settlement, to include the factors and reasons considered in reaching the same and justifying the compromise of the Former Employees' FLSA claims;[2] and (3) that the Former Employees' attorneys' fees and costs were agreed upon separately and without regard to the amount paid to the plaintiff. *Id.* at 1228. If the foregoing is provided to the Court by the Parties and the settlement is patently reasonable, the Court will approve the settlement without a lodestar inquiry. *Id.*

20) The Parties agree that the settlement constitutes a compromise of the Former Employees' FLSA overtime claims. *See Bonetti*, 715 F. Supp. 2d at 1228.

21) The terms of the settlement are contained in Exhibit "A" to this Motion. The FLSA claims were based upon the Former Employees allegedly being misclassified as exempt from the FLSA. (Doc. 27 at 10, ¶¶ 27-29).

22) There is no evidence of fraud or collusion behind the settlement. This case was vigorously prosecuted and defended by the Parties; thus, indicating it is anything but a "friendly lawsuit."

23) This matter was settled at an all-day mediation with the assistance of a neutral third-party mediator, Carlos Burruezo, who is an experienced class action

---

[2] Some factors courts consider are: 1) existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage the proceedings and the amount of discovery completed; (4) the probability of the employee's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Allen v. Farah Petion Ins. Agency LLC.*, Case No.: 6:22-cv-1573-PGB-EJK, 2023 WL 3975313 *6 (M.D. Fla. April 17, 2023).

mediator. *See Roubert v. Capital One Financial Corp.*, 2023 WL 5916714 *2 (M.D. Fla. July 0, 2023). Courts have observed that having a mediator's assistance in reaching a settlement supports approving a FLSA settlement. *See Norris v. Lake Conway Landscaping of Orlando, Inc.*, 2015 WL 3632314 *2 (M.D. Fla. June 10, 2015); *Pierre-Val Buccaneers, Ltd. Partnership*, 2015 WL 3776918 *2 (M.D. Fla. June 17, 2017).

24)   The Parties are represented by experienced wage & hour counsel in an adversarial context, thus, further demonstrating the settlement is fair and reasonable. *See Bonetti*, 715 F.Supp.2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."); *see also Diaz v. Hillsborough County Hos. Authority*, 2000 WL 1682918 *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v. Hinton, 559 F.2d 1326*, 1330 (5th Cir. 1977)) (stating that short of fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel").

25)   The Former Employees compromised their FLSA claims based on consideration of National's position and evidence that Former Employees have no claim because they were properly classified as exempt from the FLSA. *See e.g. Hudkins v. Maxim Healthcare Services, Inc.*, 39 F. Supp. 2d 1349, 350 (M.D. Fla. 1998) (recruiter exempt from FLSA); *Andrade v. Aerotek, Inc.*, 700 F. Supp. 2d 738, 444-48 (D. Md. 2010) (recruiter exempt from FLSA).

26)   The Former Employees considered National's position and evidence that the Former Employees had no FLSA claim because they worked remotely and

6

National had no knowledge the Former Employees were working overtime. All the records produced indicate the Former Employees worked forty-hours a week or less. Thus, the Former Employees would not be able to prove a violation of the FLSA under case law. *See Fletcher v. Universal Tech. Inst., Inc.,* 2006 WL 2297041 *1 (M.D. Fla. June 15, 2006) ("a plaintiff must show that his employer had knowledge … of his overtime worked.") (internal quotations and citations omitted).

27) The Former Employees considered the fact that their entire claim was "off-the-clock work" and the difficulty of proving such a claim. *See Czopek v. TBC Retail Group, Inc., Case No.:* 8:14-cv-675-T-36TBM, 2016 U.S. Dist. LEXIS 168304 *6-7 (M.D. Fla. Nov. 7, 2016) (court acknowledging the significant hurdle in proving off-the-clock work when there is a lack of record evidence and policies in place to ensure that off-the-clock work is not performed); *Jackson v. U.S. Bancorp,* Case No.: 20-2310-EFM, 2022 WL 744693 *4 (D. Kan. March 11, 2022) ("Factually complicated off-the-clock claims under the FLSA are difficult to prove….") (cleaned-up); *Dennis v. Sandhills Emergency Physicians, P.A.*, Case No.: 1:20-cv-273, 2022 WL 448338 83 (M.D.N.C. Sept. 27, 2022) (In approving settlement, Court acknowledged the factually difficult task of proving off-the-clock work where there are no records).

28) The Former Employees considered National's 29 U.S.C. § 260 defense to liquidated damages. On the issue of liquidated damages, there was evidence that National had "an honest intention to ascertain what the FLSA requires and to act in accordance with those requirements." *See Feniger v. Café Aroma*, Case

No.: 2:05-cv-319-TAW-SPC, 2007 U.S. Dist. LEXIS 18706*8 (M.D Fla. March 16, 2007). Specifically, there was evidence that National relied upon U.S. Department of Labor Opinion Letter FLSA 2018-12 in classifying the Former Employees as exempt. As such, there is a dispute as to entitlement to liquidated damages and there is evidence that the Former Employees would not be entitled to them. Under such circumstances a settlement is fair and reasonable if it does not include liquidated damages. *See Patterson v. Acad. Fire Prot., Inc.*, Case No.: 3:13-cv-87, 2014 WL 169812 *5-6 (M.D. Fla. Jan. 8, 2014) (settlement reasonable despite absence of liquidated damages where genuine dispute existed over whether employee was entitled to them and parties agreed there was no evidence to support them); *Chaparro v. Brevard Extraditions, Inc.*, Case No.: 6:16-cv-776-Orl-40DCI, 2017 WL 1078193 *3 (M.D. Fla. March 3, 2017) ("Plaintiff was entitled to waive liquidated damages given the parties representation that there was a genuine dispute regarding Plaintiff's entitlement to them....").[3]

29) The Former Employees considered that their claims would be limited to the two (2) year statute of limitations, rather than three (3) years in light of the evidence regarding liability, the evidence of good faith and the lack of evidence of a willful violation. Thus, basing resolution on a two-year damage

---

[3] Furthermore, because liability in disputed in this matter, liquidated damages can be waived. *See Rodriguez v. Transdev Bus on Demand, LLC.*, Case No.: 6:18-cv-Orl-22GJK, 2018 WL 4501096 *3 (M.D. Fla. Aug. 28, 2018) (Kelly, J. recommending approval of settlement where Plaintiff waived liquidated damages because there was a bona fide dispute as to whether the Defendant violated the FLSA); *Fox v. Services, Supports and Solutions, Inc.*, Case No.: 6:17-cv-1130-37LRH, 2019 WL 1545713 *3, n.6 (M.D. Fla. March 22, 2019) (accepting waiver of liquidated damages when coverage was in dispute); *Goodrich v. Park Ave. Dermatology, P.A.* Case No.: 3:15-cv-1435-j-32PDB,

model is fair and reasonable. *See generally, Branch v. Jacksonville Greyhound Racing, Inc.*, Case No.: 2013 WL 12388518 *3 (M.D. Fla. Oct. 29, 2013) (Settlement fair and reasonable where liquidated damages and third year not recovered where liability contested and parties represented by experienced wage & counsel).

30) The total range of the Former Employees' potential recovery of overtime wages is estimated by Former Employees to range from zero to $228,710.16[4] for the applicable two-year period. When considering the evidence supporting the Former Employees being properly classified as exempt, the evidence that National had no knowledge of overtime being worked, the difficulty of proving the off-the-clock work, the evidence of good faith, and the lack of evidence of willfulness- the difficulty of the Former Employees' overtime claim becomes apparent and falls toward the low end of the range of possible recovery, if any. The Former Employees will be receiving a total sum of $48,000.00[5] pursuant to the settlement. By way of settlement, the Former Employees will be receiving approximately 21% of the total wages claimed.[6] This is a fair and reasonable under the circumstances. *See e.g. Kyles v. Health First, Inc.*, Case

---

2016 WL 6782771 *3, n.2 (M.D. Fla. Oct. 25, 2016) (accepting waiver of liquidated damages when liability in dispute).

[4] The individual breakdown is as follows: (1) Jairo Armstrong- $75,215.91; (2) Diane Sandoval- $99,432.86; (3) Cherisse Sandoval-$47,953.04; (4) Olivia Campbell-$6,108.35; (5) Brittany LaMantia-$0.00; (6) David Palumbo- $0.00.

[5] *See* Exhibit "A." (Mr. Armstrong will receive $20,000.00; Diane Sandoval will receive $15,000.00; Cherisse Sandoval will receive $7,500; David Palumbo will receive $2,000.00; Brittany LaMantia will receive $2,500; and Olivia Campbell will receive $4000.00.).

No.: 6:09-cv-1248, 2010 WL 5140730 *3 (M.D. Fla. Dec. 3, 2010) (Court found settlement fair and reasonable where employee compromised her $179,358.38 claim for $3,935.00); *Bednarz v. Pat the Plumber, Inc.*, Case Mo.: 5:11-cv-506, 2012 WL 1094229 *2 (M.D. Fla. Mar. 16, 2012) (A compromise of 15.1% of the claimed unpaid wages to be fair and reasonable).

31) The Parties have also resolved all issues between them because "a settlement must necessarily address all of the parties' claims." *Bright v. Mental Health Resources Center, Inc.*, Case No.: 3:10-cv-427-J-37TEM, 2012 WL 866804 *5 (M.D. Fla. March 14, 2012). In approving an FLSA settlement, it is appropriate to consider the benefit acquired by an employee in obtaining a resolution of an employer's claim. *See e.g. Alexander v. Bay Towers Development, LLC.*, Case No. 2008 WL 11472139 *2 (M.D. Fla. Jan. 16, 2008) (Court considered Defendant's release of certain counterclaims in accepting Plaintiff's compromise of his FLSA claim); *accord Gregory v. Creative Management Group, Inc.*, Case No.: 6:07-cv-279-Orl-22DAB, 2007 WL 4557287 *2 (M.D. Fla. Dec. 20, 2007); *Rastellini v. Amy Charles, Inc.*, Case No.: 6:08-cv-255-Orl-28GJK; 2009 WL 2579316 (M.D. Fla. Aug. 17, 2009) (Court approved FLSA settlement were employee received no monetary benefit because counterclaim exceeded FLSA claim). National produced evidence showing it suffered more than $20,000.00 in damages that it sought to collect from Mr. Armstrong. Additionally, National contended that it may have individual,

---

[6] The division of the amount paid into liquidated damages and wages under the settlement agreement was an attempt to ensure that the Plaintiffs received the most

permissive counterclaims against the other Former Employees, including: Ms. Diane Sandoval; Ms. Cherisse Sandoval; Mr. David Palumbo; Ms. Brittany LaMantia; and Ms. Olivia Campbell. Resolving these disputes under the context of this case further demonstrates the reasonableness and fairness of the resolution.

32) The settlement agreement also contains a mutual general release of any and all claims arising out of employment between the parties. While general releases are typically disfavored in the context of FLSA settlements, they are acceptable "where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties." *Andersen v. Affordable Appliance, LLC.*, Case No.: 8:19-cv-571-T-36CPT, 2019 WL 3537075 *3 (M.D. Fla. July 25, 2019) (citations and quotations omitted). Here, the Former Employees have each received $100.00 as additional consideration for the general release. *See e.g. Middleton v. Sonic Brands, L.L.C.*, Case No.: 6:13-cv-386-Orl-28KRS, 2013 WL 4854767 *3 (M.D. Fla.. Sept. 10, 2013) (approving settlement providing $100.00 additional consideration for general release); *Roman v. FSC Clearwater, LLC.*, Case No. 2017 WL 1653571 *3 (M.D. Fla. April 21, 2017) (approving settlement providing $100.00 additional consideration for general release). As additional consideration for the general release, the release is mutual and because National has affirmative claims against Mr. Armstrong and threatened claims against the Former Employees, this renders the general release fair and reasonable. Furthermore, the Former Employees are not aware

---

"cash-in-hand" from this settlement due to possible tax implications.

of any other potential claims against National aside from those claims brought in this matter. *See* Exhibit "A" at ¶ 5 ("Armstrong and each of the Opt-In Plaintiffs state they are unaware of any other claims they may have against National."). *Allen v. Farah Petion Ins. Agency LLC.*, Case No.: 6:22-cv-1573-PGB-EJK, 2023 WL 3975313 *6 (M.D. Fla. April 17, 2023) (This Honorable Court approved a FLSA settlement containing a general release and no-rehire when $500 in additional consideration was given for both clauses and it was certified that the employee was unaware of any additional claims against the employer). Finally, the general releases were considered separately and negotiated separately. *See Menjiva v. E&L Construction Serv.*, Case No.: 6:14-cv-2057-ORL-31KRS, 2015 U.S. Dist. LEXIS 71151, 2015 WL 3485991 *2 (M.D. Fla. June 2, 2015) (declining to accept a general release in an FLSA case because the parties do not state that the release was negotiated separately).

33) The settlement agreement also contains a no-rehire clause. (*See* Exhibit "A" at ¶ 13). The Court can approve the agreement with the clause because the Former Employees have received additional consideration – specifically $100.00 and a general release from National. *See Gronik v. Briar Team, LLC.*, Case No.: 6:21-cv-1089-WWB, 2021 WL 7451912 *4 (M.D. Fla. Oct. 28, 2021) (Approving no-rehire provision). Furthermore, the nature of this proceeding has been highly antagonistic with the Former Employees having no desire for future employment with National. *See Sanchez v. La Cantina Cocina Mexicana*, No. 6:21-cv-00337-JA-EJK, 2021 U.S. Dist. LEXIS 168168, at *12 (M.D. Fla. Sep. 3, 2021) (recognizing antagonistic relationship supports finding that no rehire clause

12

is fair and reasonable); *Cruz v. Winter Garden Realty, LLC.*, 2013 WL 4774617 *3 (M.D. Fla. Sept. 4, 2013) (Approving FLSA settlement with a no rehire clause because employee indicated she did not desire re-employment).

34) The settlement agreement also contains non-incitement clause. (*See* Exhibit "A" at ¶ 24). The Court can approve the agreement with the clause because the Former Employees have received additional consideration for this clause – specifically $150.00 paid to each Claimant. *See Comandini v. Greystone Healthcare Management Corp.*, Case No.: 8:19-cv-3101-TPB-JSS, 2021 WL 1724911 *3 (M.D. Fla. April 8, 2021) (Court approved settlement that included non-incitement clause when supported by independent consideration).

35) The settlement agreement also contains a limited confidentiality clause. (*See* Exhibit "A" at ¶ 25) The Court can approve the agreement with the clause because the Former Employees have received additional consideration - specifically $100.00 and a general release from National. *See e.g. Voight v. Tender Heart Kare, LLC.*, Case No.: 5:22-cv-547-JA-PRL, 2023 WL 6277887 *3 (M.D. Fla. Sept. 11, 2023) (Court approved settlement that included confidentiality provision by independent consideration); *accord Parker v. Catches Rest., LLC.*, Case No.: 8:23-cv-758-JLB-JSS, 2024 WL 1077345 *3 (M.D. Fla. Jan. 17, 2024); *Wade v. Grieger Enter., LLC.*, Case No.: 8:23-cv-443-TPB-JSS, 2023 WL 3588862 *2 (M.D. Fla. May 5, 2023); *Briseno v. La Nopalera Beach Blvd., Inc.*, Case No.: 3:21-cv-1059-TJC-LLL, 2022 WL 1730279 *4 (M.D. Fla. July 26, 2022); *Gronik v. Briar Team, LLC.*, Case No.: 6:21-cv-1089-WWB, 2021 WL 7451912 *4 *Smith v. Aramark Corp.*, Case No.: 6:14-cv-409-Orl-22KRS; 2023 WL 6277887 *4 (M.D.

13

Fla. Nov. 4, 2014) (Court approved settlement that included general releases, confidentiality provision and non-disparagement clause when supported by independent consideration).

36) The Parties acknowledge that the Former Employees' attorneys' fees and costs[7] were agreed upon separately and without regard to the amount paid to the Former Employees. *See Bonetti*, 715 F.Supp.2d at 1228.[8]

37) The attached agreement includes every term and condition of the Parties' settlement. The parties have not entered into any other separate agreement which is in any way related to this action or settlement. *See Allen v. Farah Petion Ins. Agency, LLC., et. al.*, 2023 WL 3975313 *1 (M.D. Fla. April 17, 2023). Thus, the Court can approve the settlement.

38) Former Employees agree they have entered into the settlement knowingly and voluntarily and after having the opportunity to fully discuss the issues with their counsel. *See generally King v. Wells Fargo Home Mortg.,* 2009 WL 2370640, *2 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the

---

[7] As long as the "attorney's fees" and "costs" were agreed upon separately and without regard to the amount paid to the claimant, Courts make no distinction between "attorney's fees, "costs," or "litigation expenses." *See e.g. Manahan v. Rehoboth Hosp., Inc.*, Case No.: 6:15-cv-1159-Orl-40KRS, 2015 U.S. Dist. LEXIS 169422 *1-2 (M.D. Fla. Dec. 18, 2015) ("the amount of attorney's fees and costs to be paid to Plaintiff's counsel is reasonable by virtue of the fact that these fees and costs were negotiated separately and without regard to Plaintiff's claim"); *Monserrate v. Hartford Fire Ins. Co.*, Case. No.: 6:14-cv-149-Orl-37GJK, 2016 U.S. Dist. LEXIS 138809 *4 (M.D. Fla. Oct. 6, 2016) (Court approved a settlement where $1,027,386.00 in attorney fees and "litigation expenses" were agreed upon separately and without regard to amount paid to class).

[8] When the attorney's fees are agreed upon separately, Courts in this District do not require the parties to indicate the amount paid in attorney's fees. *See e.g. Meyer v. U.S. Installation Corp.,* Inc., Case No.: 2:15-cv-583-FtM-99CM; 2016 U.S. Dist. LEXIS 112672 *6 (M.D. Fla. August 24, 2016) ("While the Court does not require that the

14

settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.").

### III. Conclusion

WHEREFORE, based on the foregoing, and pursuant to *Bonetti*, the Parties respectfully request that this Court approve their Settlement Agreement and dismiss the case with prejudice.

Dated: April 19, 2024

Respectfully submitted,

*s/Scott A. Richards*
**Mary Catherine Losey, Esq.**
Florida Bar No. 69127
Primary: closey@losey.law
Secondary: docketing@losey.law
**Scott A. Richards, Esq.**
Florida Bar No. 72657
Primary: srichards@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-7389
*Counsel for Plaintiff*

*s/Scott C. Adams**
**Scott C. Adams, Esq.**
Florida Bar No. 573442
Primary: sadams@labaradams.com
Secondary: jcane@losey.law
**N. Ryan LaBar, Esq.**
Florida Bar No. 10535
Primary: rlabar@labaradams.com
**LaBar & Adams**
2300 East Concord Street
Orlando, FL 32803
Telephone: (407) 835-8968
*Counsel for Defendant*

* Electronic signature included with express authorization

---

parties indicate the amount paid in attorney's fees...."). Yet, the amount paid is contained in the settlement agreement.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed this 19th day of April, 2024 using the Court's CM/ECF system, which will send notice to all counsel of record.

*s/Scott A. Richards*
**Scott A. Richards, Esq.**
Florida Bar No. 72657
